**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Kareem Jamal CURRENCE,**
**Defendant–Appellee.**

No. 05–4894.

United States Court of Appeals,
Fourth Circuit.

Argued March 21, 2006.

Decided May 4, 2006.

federal court has determined that it should        relinquish jurisdiction over the case.'').

**ARGUED:** John Staige Davis, V, Assistant United States Attorney, Office of the United States Attorney, Richmond, Virginia, for Appellant. Paul Geoffrey Gill, Assistant Federal Public Defender, Office of the Federal Public Defender, Richmond, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellant. Frank W. Dunham, Jr., Federal Public Defender, Alexandria, Virginia, for Appellee.

Before WILKINS, Chief Judge, and WILLIAMS and SHEDD, Circuit Judges.

Reversed and remanded by published opinion. Judge SHEDD wrote the opinion, in which Chief Judge WILKINS and Judge WILLIAMS joined.

SHEDD, Circuit Judge.

Kareem Jamal Currence is under indictment for possession of crack cocaine with intent to distribute and possession of crack cocaine with intent to distribute in a school zone. *See* 21 U.S.C. §§ 841(a) and 860. Before trial, Currence moved to suppress evidence on the ground that it was obtained in violation of the Fourth Amendment, and the district court granted the motion. Pursuant to 18 U.S.C. § 3731, the United States now appeals the suppression order.[1] We reverse and remand for further proceedings.[2]

## I

On July 6, 2004, Richmond, Virginia, police received information from a confidential informant that a man on a bicycle was selling drugs on a street corner in Richmond. The informant gave a detailed description of the man. Police Detective Fred Bates and another detective went to the location and approached Currence, who matched the description given by the informant. At Detective Bates' request, Currence stepped off the bicycle and was frisked. The frisk uncovered money, but no drugs or weapons.

Currence identified himself to the detectives, and they ran a radio check on him. As a result, the detectives learned that Currence had an outstanding criminal warrant. The detectives then handcuffed Cur-

---

1. In accordance with § 3731, the United States certified to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding. *See* J.A. 68.

2. We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Cardwell*, 433 F.3d 378, 388 (4th Cir.2005).

rence and placed him under arrest pending confirmation of the warrant.

At that time, Detective Michael Bohannon arrived on the scene. Detective Bates asked Detective Bohannon to search the bicycle, which was next to Currence and the detectives. Detective Bohannon was aware that drug dealers sometimes use hollow areas on bicycles to attempt to conceal drugs. As he was searching the bicycle, Detective Bohannon—without using any tools—slid off the end cap from the right handlebar and discovered plastic baggies containing what appeared to be crack cocaine inside the handlebar.

The detectives then arrested Currence for possession of crack cocaine. Thereafter, the detectives informed Currence of his rights, and he made incriminating statements. A subsequent test of the substance found in the handlebar indicated that it was crack cocaine.

## II

■ Currence moved to suppress the crack cocaine under the Fourth Amendment, which "generally requires police to secure a warrant before conducting a search," *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999), and which renders a "warrantless search ... invalid unless it falls within one of the narrow and well-delineated exceptions" to the Fourth Amendment's warrant requirement, *Flippo v. West Virginia*, 528 U.S. 11, 13, 120 S.Ct. 7, 145 L.Ed.2d 16 (1999). Contending that the crack cocaine was illegally seized, Currence also argued that his post-arrest statements are "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In opposition to the suppression motion, the United States argued that several exceptions apply, one of which is that the search was incident to Currence's lawful arrest. As we explain

below, we agree with the United States that the search of Currence's bicycle handlebar falls within this exception.

### A.

■ "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). This exception provides that when law enforcement officers have probable cause to make a lawful custodial arrest, they may—incident to that arrest and without a warrant—search "the arrestee's person and the area 'within his immediate control.'" *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). "Such searches have long been considered valid because of the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." *New York v. Belton*, 453 U.S. 454, 457, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (quoting *Chimel*, 395 U.S. at 763, 89 S.Ct. 2034). However, "[t]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." *Michigan v. DeFillippo*, 443 U.S. 31, 35, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). This is a "bright line" rule of constitutional law. *United States v. Porter*, 738 F.2d 622, 627 (4th Cir.1984) (*en banc*).

■ Like other warrantless searches, a search incident to arrest "must be limited in scope to that which is justified by the particular purposes served by the exception." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

Searches incident to arrest have both a geographic and temporal limitation. Geographically, such searches must be confined to the arrestee's person and the area within the arrestee's "immediate control," which is "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." *Chimel*, 395 U.S. at 763, 89 S.Ct. 2034. This can include both open and closed spaces, *see id.* ("A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested."), as well as locked items, *see United States v. Silva*, 745 F.2d 840, 847 (4th Cir.1984) (upholding search incident to arrest where officer removed a key from the arrestee's pocket and unlocked a bag sitting next to the arrestee). Moreover, "officers may separate the suspect from the [item] to be searched, thereby alleviating their safety concerns, before they conduct the search." *United States v. Han*, 74 F.3d 537, 542 (4th Cir.1996). Temporally, searches incident to arrest must be "substantially contemporaneous with the arrest," *Stoner v. California*, 376 U.S. 483, 486, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), and although a search can occur before an arrest is actually made, *see Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), a search "may not precede an arrest and serve as part of its justification," *Sibron v. New York*, 392 U.S. 40, 63, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

### B.

The district court found that Currence's initial arrest "was supported by probable cause based on the outstanding misdemeanor warrant issued against him," that the arrest "was not based on the contraband found," and that "the detectives were authorized to make a search incident to [his] lawful arrest." J.A. 65. These determinations appear to be amply supported by the record, and Currence does not appear to argue otherwise.[3] Therefore, we accept for purposes of this appeal that the detectives were authorized to arrest Currence for the outstanding criminal charge and to search him and the area within his "immediate control" contemporaneous with that arrest. *See United States v. Grandison*, 783 F.2d 1152, 1156 (4th Cir.1986) (holding that "officers who rely upon [an outstanding arrest] warrant may arrest a person at whom the warrant is addressed and conduct a contemporaneous search of the arrestee's person and his possessions").

### C.

This does not end our analysis, however, because although the district court concluded that a search incident to Currence's arrest was permissible, it further concluded that the bicycle handlebar was not within the permissible scope of that search. The district court grounded this conclusion on *Belton*, in which the Court considered "the question of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants." 453 U.S. at 459, 101 S.Ct. 2860. The Court in *Belton*, applying the general rule expressed in *Chimel*,[4] held

---

**3.** In his appellate brief, Currence "acknowledges that the officers' testimony is consistent with [him] being arrested on an outstanding arrest warrant, and about to be placed in a police car, prior to the bicycle search ... by Det. Bohannon." *Brief of the Appellee*, at 4.

**4.** The Court stated: "Our holding today does no more than determine the meaning of *Chimel's* principles in this particular and problematic context. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." *Belton*, 453 U.S. at 460 n. 3, 101 S.Ct. 2860. Although

that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," and in doing so "may also examine the contents of any containers found within the passenger compartment...." 453 U.S. at 460, 101 S.Ct. 2860 (footnotes omitted). The Court stated that a "container" for purposes of the search is "any object capable of holding another object," *id.* at 460 n. 4, 101 S.Ct. 2860, and that "[s]uch a container may ... be searched whether it is open or closed," *id.* at 461, 101 S.Ct. 2860. The Court specifically excluded the trunk of an automobile from the scope of its holding. *Id.* at 460 n. 4, 101 S.Ct. 2860.

The district court held that "the search incident to arrest rationale logically extends to searches of bicycles." J.A. 66. However, the district court concluded that "the facts of this case exceed the parameters of the authorized search." *Id.* In reaching this holding, the district court explained:

> The detectives dismantled a part of the bicycle (although with very minimal intrusion) that was not a device created to be a container. While the inside of the handlebar is an "object capable of holding another object," it is not the type of container that can be searched as defined in *Belton.* The search of the handlebar is akin to the search of the trunk of a car and may not be searched incident to arrest.

*Id.* The United States challenges this conclusion in this appeal.

### D.

The district court's focus on *Belton,* and more specifically its attempt to analogize the bicycle to an automobile in order to fit this case within *Belton,* is understandable in light of the relatively unique factual circumstances of this case, as well as the United States' argument below. *See, e.g., Response of the United States to Defendant's Motion to Suppress,* at 7 ("Following his lawful arrest, under *Belton,* the officers could search the bicycle the defendant was operating, just like any other vehicle."). However, we believe that this focus and this analogy are unnecessary for resolution of this case. As we have noted, *Belton* is merely one specific application—in the automobile context—of the general rule concerning searches incident to arrest expressed in *Chimel.* Although certain aspects of *Belton* are, of course, instructive as to application of the general rule, the dispositive issue for our purposes is not whether a bicycle is akin to an automobile or whether a handlebar is akin to a trunk. Rather, the issue we must ultimately decide is whether the area searched (*i.e.,* the bicycle handlebar) was at the time of the arrest within Currence's "immediate control"—that is, "the area into which [he] might reach in order to grab a weapon or evidentiary items." *Chimel,* 395 U.S. at 763, 89 S.Ct. 2034. If it was, then the search is constitutional.

Viewed in this light, we hold that the search of the bicycle handlebar was permissible as a search incident to Currence's lawful arrest. When the detectives first encountered Currence, he was on the bicycle, and it appears that during the entire time before they discovered the crack co-

---

"*Chimel* stands in a long line of cases recognizing an exception to the warrant requirement when a search is incident to a valid arrest," *Cupp v. Murphy,* 412 U.S. 291, 295, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), we have referred to *Chimel* as being the "leading authority" addressing this exception, and we have pointed to *Belton* as one example of the Supreme Court "broadly" interpreting *Chimel. See Han,* 74 F.3d at 541–42.

caine, he was in close proximity to the bicycle. The bicycle was therefore within Currence's "immediate control" and was (as the district court recognized) subject to being searched incident to his lawful arrest. We believe that because Detective Bohannon was able to remove the handlebar end cap by simply sliding it off "with very minimal intrusion," J.A. 66, there is no basis under *Chimel* to treat the handlebar differently from other items within the immediate control of an arrestee that may be opened during a search incident to an arrest. Just as an arrestee's ability to reach into, for example, a closed drawer or a locked bag makes those items searchable incident to an arrest, Currence's ability to reach into the easily accessible handlebar likewise makes it searchable.[5]

### III

Based on the foregoing, we reverse the suppression order and remand for further proceedings consistent with this opinion.[6]

*REVERSED AND REMANDED*

---

5. As we have noted, there are limits to the scope of a search incident to arrest. Nothing in this opinion should be construed as a holding that all areas of a bicycle can automatically be searched in every case. We merely hold that on the specific facts of this case, the search was permissible as incident to the arrest.

6. In light of this disposition, we need not address the United States's alternate theory that the search was lawful under the "vehicle exception" to the Fourth Amendment's warrant requirement.