Filed: April 20, 2010

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-4169
(3:08-cr-00190-RLW-1)

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

ANTONIO EDWARD BATTLE,

        Defendant - Appellant.

O R D E R

The court amends its opinion filed March 16, 2010, as follows:

On page 2, second paragraph, line 6; page 3, first full paragraph, lines 2 and 3; and page 12, first paragraph, line 8 -- "February 28, 2008" is corrected to read "February 28, 2007."

On page 2, second paragraph, line 7 – "occurring the day after" is corrected to read "occurring a year after."

For the Court – By Direction

/s/ Patricia S. Connor
Clerk

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4169**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

        v.

ANTONIO EDWARD BATTLE,

              Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Richard L. Williams, Senior District Judge.  (3:08-cr-00190-RLW-1)

Argued:  January 27, 2010            Decided:  March 16, 2010

Before WILKINSON, DUNCAN, and DAVIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Amy Leigh Austin, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant.  Michael Ronald Gill, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.
**ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Patrick L. Bryant, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Dana J. Boente, United States Attorney, Alexandria, Virginia, Richard Daniel Cooke, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Antonio Battle ("Battle") was indicted on five counts of manufacturing counterfeit United States currency in violation of 18 U.S.C. § 471 and two counts of passing counterfeit currency in violation of 18 U.S.C. § 472. After a jury trial, Battle was convicted on all seven counts. Battle appeals, arguing that the district court erred in denying his motion to suppress evidence and in entering separate (though concurrent) sentences on the five manufacturing counts. For the reasons that follow, we affirm.

I.

Battle does not challenge the sufficiency of the evidence to support his convictions and so we briefly summarize the facts. The manufacturing counts of the indictment arose from the seizure of documents containing computer-generated images of United States currency from Battle's backpack after a traffic stop on February 28, 2007. The passing counts arose from events occurring a year after the traffic stop, February 29, 2008, and on March 16, 2008, when Battle used counterfeit $100 notes to make purchases at Wal-Mart. Battle was identified as the person passing the notes at Wal-Mart through an internal investigation, which included examination of cash register tapes in conjunction with video surveillance from security cameras. In addition,

Battle's criminal agency was confirmed by the cashier who handled the March transaction, Desdemona Garrison, who had been dating Battle's son for three years. Garrison thought that the notes looked and felt "funny" but Battle told Garrison that the money was stiff because it was tax rebate money. Garrison accepted the notes, believing that Battle would not give her counterfeit currency.

## II.

### A.

Prior to trial, Battle moved to suppress the counterfeit notes found in his backpack during the February 28, 2007, traffic stop. After an evidentiary hearing, the district court denied the motion to suppress, inter alia, based on its finding and conclusion, announced from the bench, that the seizure resulted from a proper inventory search of the vehicle. J.A. 78-84. Battle contends that the district court erred in denying the motion.

When considering a district court's ruling on a motion to suppress evidence, we review the district court's finding of facts for clear error and its legal conclusions de novo. United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). Because the district court denied Battle's motion to suppress, we construe the evidence adduced at the suppression hearing in the

3

light most favorable to the government. United States v. Perkins, 363 F.3d 317, 320 (4th Cir. 2004).

### B.

Battle was the front seat passenger in a vehicle driven by his nephew Laron Battle ("Laron") in Richmond, Virginia. Richmond Police Officer Scott Campbell ("Officer Campbell") recognized the vehicle from a previous incident and believed from that encounter that the driver's license had been suspended. Officer Campbell also observed that one of the car's brake lights was inoperative. He initiated a traffic stop. During the traffic stop, Laron failed to produce a driver's license, registration, or proof of insurance. Officer Campbell then determined that Battle could not lawfully operate the vehicle because his driver's license also had been suspended. Officer Campbell, intending to impound the vehicle, had both men exit the vehicle and called a towing company. Before the traffic stop was completed, a backup officer, Kevin Hughes ("Officer Hughes"), also arrived at the scene.

Officer Campbell knew from his experience and training that he needed to conduct an inventory search to document the presence of any high-value personal property or contraband in the vehicle before it was towed away. He told Laron and Battle they were free to leave, but both men elected to remain on the scene during the inventory search. Officer Campbell asked Laron

4

if there was anything in the vehicle that the officers needed to know about, and Laron replied "no." J.A. 54. Laron also voluntarily consented to a search of the vehicle.

The Richmond Police Department ("RPD") has an established policy relating to the inventory of impounded motor vehicles. The policy commands a search of any location within the vehicle in which personal property or hazardous materials "may reasonably be found, including but not limited to, the passenger compartment, trunk, containers, and glove compartment." J.A. 27. In accordance with the RPD policy, Officer Campbell commenced a systematic search of the vehicle.

Officer Campbell found a backpack on the backseat of the vehicle. When Officer Campbell picked up the backpack, Battle approached him and identified the bag as his property.[1] Officer Campbell then offered to search the bag outside the vehicle, where Battle could watch. Inside the backpack, Officer Campbell found a tan envelope containing ten sheets of paper. Each sheet of paper had two or more images of United States currency (tens and twenties) printed on it, with the backs of the notes aligned to match the fronts. Officer Campbell seized

---

[1] Officer Campbell testified that Battle, somewhat agitated, "approached at a charge," although Officer Hughes did not notice any unusual behavior by Battle. In any event, to relieve the tension, Officer Campbell offered to search the backpack outside the vehicle within view of Battle.

the documents and completed his inventory.  The backpack did not contain any weapons or hazardous materials.

Officer Campbell returned the backpack to the vehicle and asked Battle about the counterfeit notes.  Battle told the officer that he had printed the notes using a computer "to see what it looked like" and "to show it to people."  J.A. 62.  At the time of the inventory search, Officer Campbell did not realize that he was authorized to effect an arrest for possession of counterfeit United States currency and he did not arrest Battle.  The next day, Officer Campbell contacted the United States Secret Service, learned that he could have arrested Battle, and obtained a warrant for Battle's arrest.

C.

The Fourth Amendment generally requires police to secure a warrant before conducting a search.  Maryland v. Dyson, 527 U.S. 465, 466 (1999); United States v. Currence, 446 F.3d 554, 556 (4th Cir. 2006).  A warrantless search, however, may be valid if the search "'falls within one of the narrow and well-delineated exceptions' to the Fourth Amendment's warrant requirement."  Currence, 446 F.3d at 556 (quoting Flippo v. West Virginia, 528 U.S. 11, 13 (1999)).  An inventory search is one such exception to the Fourth Amendment warrant requirement.  South Dakota v. Opperman, 428 U.S. 364, 374 (1976); United States v. Banks, 482 F.3d 733, 738-39 (4th Cir. 2007).  Thus,

6

evidence recovered from a lawful inventory search is admissible in a criminal proceeding.  <u>Opperman</u>, 428 U.S. at 373-75.

For an inventory search of a vehicle to be lawful, the vehicle searched must first be in the lawful custody of the police.  <u>United States v. Murphy</u>, 552 F.3d 405, 412 (4th Cir. 2009).  Here, Battle concedes that Office Campbell had lawfully stopped his nephew's car based on the inoperative brake light; he also had the authority to impound the vehicle.  Appellant's Br. 18.

If a vehicle is in lawful police custody, then a valid inventory search must be conducted pursuant to standardized police procedures. Its purpose must be to identify and secure personal property inside the vehicle and not to gather incriminating evidence against the vehicle's occupants.  <u>United States v. Brown</u>, 787 F.2d 929, 932 (4th Cir. 1986); <u>see also</u> <u>Colorado v. Bertine</u>, 479 U.S. 367, 372 (1987) ("inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property, and to guard the police from danger"); <u>Florida v. Wells</u>, 495 U.S. 1, 4 (1990) ("[t]he individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime'") (quoting <u>Bertine</u>, 479 U.S. at 743).  The existence of a standardized

7

police procedure may be proven by reference to either written rules and regulations or testimony regarding standard practices. United States v. Matthews, 591 F.3d 230, 235 (4th Cir. 2009). "'A single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.'" Illinois v. Lafayette, 462 U.S. 640, 647 (1983) (quoting New York v. Belton, 453 U.S. 454, 458–60 (1981)).

The RPD has a written set of standard procedures for seizing and towing vehicles, spelling out the procedures for inventory searches of seized vehicles. J.A. 25-37. Battle argues that the inventory search here was not valid because Officer Campbell deviated from these procedures. We disagree.

Under "Towing and Storage of Vehicles for Traffic Violations," the RPD policy establishes standard procedures to be followed prior to towing. Section II.C.2 states: "The officer shall inventory for all valuables left in the vehicle. Any money, drugs, weapons or other valuable item such as jewelry, tools, etc., excluding clothes, shall be turned in to Property and Evidence Unit." J.A. 27. Here, Officer Campbell did just that: he took inventory of all valuables left in the vehicle, while conducting the inventory in a methodical manner, from left to right, front to back.

8

Battle argues that Officer Campbell deviated from the RPD policy because he failed to afford either himself or Laron an opportunity to remove any valuables from the vehicle <u>before</u> conducting an inventory search. For support that the RPD policy requires officers to allow passengers to remove valuables before towing, Battle points to Section III.B.2.b of the RPD policy, which provides that, "Prior to towing, the officer shall . . . Ask the owner or operator of the vehicle to remove, if possible, all valuables from the vehicle prior to impoundment . . ." J.A. 26-27. Even if we credit Battle's reading of the policy, Officer Campbell was not required to follow the RPD procedures word-for-word.[2] Items seized during a legal inventory search may be admissible as evidence because "reasonable police regulations

---

[2] It is worth noting that the language Battle relies on in the RPD policy in support of his argument that Officer Campbell was absolutely required to turn over the backpack to him before (or in lieu of) searching it also supports the government's view that the policy simply allowed Battle to reclaim his backpack after the inventory search, but before the vehicle was towed. The policy states, "[p]rior to towing, the officer shall . . . [a]sk the owner or operator of the vehicle to remove, if possible, all valuables from the vehicle prior to impoundment . . ." J.A. 26-27 (alterations and emphases added). The specific language of the policy does not require an officer to allow the passengers to retrieve their valuables before the inventory search.

Manifestly, allowing a motorist to retrieve containers before the completion of an inventory search would defeat one of the purposes of the search: the protection of an officer. <u>See, e.g.,</u> <u>United States v. Murphy</u>, 552 F.3d 405, 408 (4th Cir. 2009) (officer found a "dagger-type weapon" in a duffle bag during an inventory search of a vehicle).

relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." Bertine, 479 U.S. at 374 (emphasis added); see also Banks, 482 F.3d at 739 ("[s]tandardized search procedures must be 'administered in good faith' for their attendant searches to satisfy the Fourth Amendment") (quoting Bertine, 479 U.S. at 376). The Fourth Amendment is satisfied so long as Officer Campbell conducted the inventory search and followed the procedures in good faith.

We conclude without hesitation that the district court's finding and conclusion that Officer Campbell properly conducted the inventory search should be affirmed. In conducting his search, Officer Campbell did not rummage for evidence of crimes. Rather, he acted in good faith as he undertook to identify, secure and protect valuable property. The discovery of the backpack and the counterfeit notes within the envelope in the backpack was an unsurprising result of the inventory search, and in fact, shows that the search that Officer Campbell conducted served its lawful purpose.[3] Therefore, because Officer

---

[3] The propriety of Officer Campbell's examination of the contents of the envelope is made plain if one hypothesizes that the counterfeit notes had been "real money." It would not be surprising to discover that individuals might secret cash in
(Continued)

Campbell conducted the inventory search following the RPD standard procedures, the district court correctly denied Battle's motion to suppress evidence of the counterfeit notes found in his backpack during the search.

## III.

Battle also challenges his 60-month concurrent sentences on the manufacturing counts, arguing that they constitute multiple sentences for the "same crime." The question of whether charges in an indictment are multiplicitous is generally reviewed de novo. United States v. Leftenant, 341 F.3d 338, 343 (4th Cir. 2003). Because Battle failed to raise the issue in district court, however, our review is only for plain error. Fed. R. Crim. P. 12(e); United States v. Dawson, 587 F.3d 640, 648 (4th Cir. 2009). Thus, Battle must show that (1) an error occurred, (2) that the error was plain, and (3) that the error substantially affected his rights. United States v. Bennafield, 287 F.3d 320, 323 (4th Cir. 2002). We find that the district court did not commit error at all when it imposed concurrent sentences on Battle for five counts of manufacturing counterfeit notes.

---

envelopes that are placed in backpacks that are placed in motor vehicles.

We have held that the imposition of multiple sentences is improper when the counts of conviction amount to one unit of prosecution. Bennafield, 287 F.3d at 322-34; United States v. Dunford, 148 F.3d 385, 389-90 (4th Cir. 1998). Battle argues that Leftenant barred his conviction and sentencing on multiple counts in this case because his convictions were based on possession of all the currency at a single time and in a single place, i.e., during the February 28, 2007, traffic stop.

Battle's reliance on Leftenant is misplaced. In Leftenant, we found that the defendant could not be charged with six separate counts of possession of counterfeit currency because the items of contraband were seized on a single occasion. 341 F.3d at 347-48. The decision was based on the premise that possession of multiple counterfeit notes at one time was no different from possession of multiple packages of drugs or multiple firearms. Id. at 348; see also Bennafield, 287 F.3d at 232-24 (holding that a defendant could only be convicted of a single act of possession for simultaneous possession of multiple packages of cocaine); Dunford, 148 F.3d at 389-40 (holding that a defendant could only be convicted of a single act of possession for multiple firearms that were seized from one location at the same time).

Unlike the defendant in Leftenant, Battle was not charged with possession of counterfeit currency, but with

12

manufacturing counterfeit currency. J.A. 8-6 ("At some point prior to on or about February 28, 2007 . . . Antonio Edward Battle, with intent to defraud, did falsely make, counterfeit, and forge obligations of the United States, that is falsely made, forged, and counterfeited Federal Reserve Notes in the denominations set forth below, each constituting a separate charge in this indictment . . .").  Battle was charged with five counts of manufacturing — one count for each serial number denomination of the notes found in his backpack.  The offense of manufacturing counterfeit currency under 18 U.S.C. § 471 is distinct from the possession of counterfeit notes under 18 U.S.C. § 471.  Evidence that each note with a unique serial number was different established that the notes with different serial numbers required separate manufacturing acts by Battle. The government was also very careful to charge Battle with manufacturing only groups of counterfeit notes identified by unique denominations and serial numbers — not with each note recovered.  Since the manufacturing charges were for notes that could be uniquely set apart by different serial numbers, each of the manufacturing charges comprised a separate unit of prosecution. Accord United States v. LeMon, 622 F.2d 1022, 1024 (10th Cir. 1980); see also Castaldi v. United States, 783 F.2d 119, 121-23 (8th Cir.) (each denomination of postage stamp counterfeited was separate violation of statute that made it

13

crime to counterfeit "any postage stamp"), cert. denied, 476 U.S. 1172 (1986). The district court did not err when it sentenced Battle on each count of conviction.

## IV.

For the foregoing reasons, we affirm Battle's convictions and sentence.

AFFIRMED

14