FILED

Aug 23 2023, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Christopher J. Evans
Dyllan M. Kemp
Dollard Evans Whalin LLP
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Roger Mendez-Vasquez,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 23, 2023

Court of Appeals Case No.
23A-CR-226

Appeal from the Hamilton
Superior Court

The Honorable Darren Murphy,
Judge

Trial Court Cause No.
29D07-2202-F6-1187

**Opinion by Judge Bradford**
Judge Riley concurs.
Judge Weissmann dissents with separate opinion.

**Bradford, Judge.**

## Case Summary

[1] In February of 2022, Fishers Police Officer Jospeh Ryder stopped a truck driven by Roger Mendez-Vasquez after witnessing a traffic infraction and determining that the truck's registration had expired. Officer Ryder discovered that Mendez-Vasquez had never had a valid driver's license in Indiana, arrested him, decided to impound his truck, and performed an inventory search. During the search, Officer Ryder discovered items that led to a charge of and conviction for Level 6 felony methamphetamine possession. Mendez-Vasquez contends that Officer Ryder's inventory search of his truck was unconstitutional and that the trial court therefore abused its discretion in admitting the evidence recovered during it. Because we disagree, we affirm.

## Facts and Procedural History

[2] On February 24, 2022, Officer Ryder was following a black truck driven by Mendez-Vasquez westbound on 96th Street in Hamilton County when he saw him activate his turn signal less than 200 feet away from the intersection with Wading Crane Avenue and make an "unexpected" right turn. Tr. Vol. II p. 8. Officer Ryder determined that Mendez-Vasquez's license plate had expired the month before and suspected that he had turned suddenly in an attempt to avoid him, so he pulled his police car onto nearby Springstone Road and waited to see if Mendez-Vasquez would return to the area. Shortly thereafter, Officer Ryder again spotted Mendez-Vasquez's truck westbound on 96th Street. Officer Ryder initiated a traffic stop and observed that Mendez-Vasquez was the vehicle's driver and sole occupant. Mendez-Vasquez produced some

identification but not a valid driver's license, and Officer Ryder learned that a person with Mendez-Vasquez's name had an active warrant for his arrest from Marion County for operating a vehicle without ever having received a license. Once Officer Ryder confirmed Mendez-Vasquez's identity, he arrested him.

[3] After Mendez-Vasquez was taken into custody, Officer Ryder decided to have the truck impounded. At the time, the Fishers Police Department had a policy regarding inventory searches of impounded vehicles, pursuant to which officers are required to "log the property of value that is located within the vehicle and put it into the inventory log sheet." Tr. Vol. II p. 13. Before beginning his search, Officer Ryder asked Mendez-Vasquez to identify items of value that he wanted in the inventory, and Mendez-Vasquez replied that he had "a lot of tools[.]" Tr. Vol. II p. 13.

[4] During his inventory search, Officer Ryder found a purse in the passenger compartment, which was the same purse from which Mendez-Vasquez had retrieved his identification after he was stopped. When Officer Ryder opened the purse, he observed a glass smoking pipe with a substance inside that appeared to be a pipe used for smoking methamphetamine. Inside the compartment in the truck's armrest, Officer Ryder located a small, partially transparent plastic container, which contained a light-colored, crystal-like substance, which was later determined to be methamphetamine.

[5] On February 25, 2022, the State charged Mendez-Vasquez with Level 6 felony possession of methamphetamine and Class C misdemeanor unlawful possession of paraphernalia. Mendez-Vasquez's bench trial began on January 17, 2023.

Mendez-Vasquez did not object to the impoundment of his truck on Fourth Amendment grounds. Mendez-Vasquez, however, did object to the inventory search of the vehicle, claiming that the search of the purse in which the contraband was discovered was outside the scope of a permissible inventory search because Mendez-Vasquez had not identified the purse as an object of value prior to the initiation of the search. The trial court overruled Mendez-Vasquez's objection and permitted Officer Ryder to testify about the items he had located inside the purse and truck. The trial court ultimately found Mendez-Vasquez guilty of Level 6 felony possession of methamphetamine and not guilty Class C misdemeanor unlawful possession of paraphernalia. The trial court sentenced Mendez-Vasquez to 654 days of incarceration.

## Discussion and Decision

[6] A constitutional challenge to the admission of the fruits of a warrantless search at a criminal trial implicates the Fourth Amendment's and Article 1, section 11's, exclusionary rules, which means that the issue is properly left to the trial court's discretion over the admission of evidence. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). We review such decisions for abuse of that discretion. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). Although the ultimate question of a search's constitutionality is a matter of law that courts review *de novo*, *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014), Fourth Amendment claims are, by their nature, fact-sensitive inquiries, and a trial court's determination of the facts is entitled to deference. *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008). Reversal of a conviction is appropriate only if a defendant can show that the

admission of evidence was contrary to the logic and effect of the facts and circumstances presented by his case or based on a misinterpretation of the law. *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001).

## I.    Article 1, section 11

Mendez-Vasquez contends for the first time on appeal that the impoundment and inventory search of his truck violated his rights against unreasonable search and seizure pursuant to Article 1, section 11, of the Indiana Constitution.  It is, however, well-settled that an issue must first be raised in the trial court by raising a timely objection, and the failure to do so results in waiver of the claim on appeal.  *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018).  When Mendez-Vasquez objected to the admission of the purse's contents at trial, Mendez-Vasquez claimed that they were "fruit of the poisonous tree" under the Fourth and Fourteenth Amendments to the United States Constitution but made no mention of Article 1, section 11, of the Indiana Constitution.  Consequently, he has waived his Indiana constitutional claims for appellate review.  *See Durden*, 99 N.E.3d at 652.

## II.    Fourth Amendment

As for Mendez-Vasquez's federal claims, the Fourth Amendment generally requires that police obtain a warrant to conduct a search of a defendant's person, house, papers, or effects unless one of the Amendment's "well-delineated" exceptions applies.  *Katz v. U.S.*, 389 U.S. 347, 357 (1967).  As courts have long recognized, one of these exceptions occurs when police officers conduct an inventory search following the impoundment of a vehicle.

*Wilford v. State*, 50 N.E.3d 371, 374 (Ind. 2016). The purpose behind the inventory-search exception is to "protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). An inventory search's validity is determined based on a two-part test: first, because the need for an inventory arises from an impound, the State must establish that the impoundment is valid under either statute or as a matter of community caretaking; and second, courts must consider whether the scope of the inventory search was reasonable. *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993).

[8] Mendez-Vasquez claims for the first time on appeal that Officer Ryder's impoundment of his truck was unconstitutional; consequently, this claim is waived for appellate review. *See Durden*, 99 N.E.3d at 652. This leaves us only with Mendez-Vasquez's contention that the scope of the inventory search of his truck was unconstitutionally broad. Even when a vehicle is validly impounded, the inventory search itself "must be conducted pursuant to standard police procedures." *Fair*, 627 N.E.2d at 435. The purpose of this requirement is to make sure that the search is carried out in a manner that serves the objectives justifying inventory searches and that sufficiently limits the discretion of the officer so that the search cannot become a pretext for a general rummaging for incriminating evidence. *Combs v. State*, 168 N.E.3d 985, 995 (Ind. 2021). That said, even when an inventory search is conducted according to a policy, it is possible for the policy, as established by the record, to be so broad as to be the

equivalent of having no policy at all. *See, e.g.*, *Fair*, 627 N.E.2d at 436. This is what Mendez-Vasquez argues.

[9] For its part, the State argues that Officer Ryder's testimony provided sufficient detail regarding his department's policy to conclude that it sufficiently regulated officer discretion. Specifically, the State points to Officer Ryder's testimony that he was required to log items "of value," required to note whether the items were taken to a locker or left in the vehicle, and permitted to only search containers that might contain valuables. The only real point of contention is whether an inventory-search policy that requires officers to inventory items that are "of value" is sufficiently restrictive of officer discretion to pass constitutional muster. We conclude that it is.

[10] We agree with the State that limiting the inventory search to items "of value," *i.e.*, items that the police could reasonably expect to be the subject of complaint were they to disappear or be damaged while in police custody, serves the purposes of the inventory-search exception while disallowing a general rummaging for incriminating evidence. For example, a purse and its contents can be inventoried because they are likely to be of value to the owner while, without more, items such as discarded paper bags cannot be searched because they are not likely to be of value. While it may be tempting to imagine a policy with additional guidance for determining value such that officer discretion is further limited, we are somewhat at a loss to understand how such a policy could be workable in practice. Attempting to craft an inventory-search policy based on apparent monetary value (perhaps the only more-or-less objective

criterion that could realistically be added to such a policy) strikes us as an exercise in futility, because an item of no apparent monetary value may nonetheless have great practical or sentimental value to its owner.

[11] Another possibility would be to require the officer to rely on the vehicle occupant's identification of items of value. This, however, is also inadequate, because the occupant would then be able to defeat any inventory search at all by denying that there was anything of value in the vehicle, which would completely thwart the purposes of inventory-search procedures, which are to "protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372. Perhaps the best practice when identifying items of value for purposes of an inventory search is to combine the exercise of officer judgment with the identification of specific items of value by the vehicle's occupant, as Officer Ryder did here. In any event, we conclude that the inventory-search policy here, which required that items of value be inventoried and was followed by Officer Ryder, sufficiently constrains the exercise of officer discretion and is therefore constitutional. *See Peete v. State*, 678 N.E.2d 415, 420 (Ind. Ct. App. 1997) (concluding that trial counsel was not ineffective for failing to challenge an inventory search where the search policy at issue provided that "'the officer is required to go through the vehicle, the interior of the vehicle and the trunk of the vehicle to ascertain if there is any valuable property or contraband or basically it is designed to protect the private

party from loss [of] the property and the wrecker lots and the police department, for liability'") (record citation omitted and brackets in *Peete*), *trans. denied*.

[12] While we acknowledge the similarity between the policy at issue in this case and the policies found to be unconstitutionally vague in *Fair* and *Sams v. State*, 71 N.E.3d 372 (Ind. Ct. App. 2017), we nonetheless conclude that those cases are distinguishable on the facts. In *Fair*, the police officer testified as follows regarding his police department's inventory-search policy: "Officer Wager testified *only* that 'we conduct an inventory search of the car to see what kind of items are in it. If there's anything valuable that might need to be placed in the property room or otherwise noted as being in the car.'" *Fair*, 627 N.E.2d at 436 (emphasis in original). In contrast to this case, however, the Court noted several indicia of pretext harmful to the State's position, including that the vehicle was searched at the scene by an officer responsible for criminal investigations; the officer made no note of Fair's personal effects, focusing instead on the contraband; there was no indication that inventory sheets were ever completed; and it was unclear that the vehicle was ever actually impounded. The *Fair* Court concluded that the search at issue was unreasonable because "[t]here was no testimony whatsoever that provided the particulars of the policy and, therefore, it is not possible for this Court to determine whether *the seemingly suspicious circumstances which attended the search were in fact irregular.*" *Id*. (emphasis added).

[13] Here, however, the record contains few of the "seemingly suspicious circumstances" that were so suggestive of pretext in *Fair*. *Id*. Officer Ryder

testified that the Fishers Police Department's inventory policy was to inventory items of value and note them on an inventory log sheet, and even Mendez-Vasquez does not dispute that his purse was an item of value that contained items of value. Officer Ryder testified that the items in the vehicle were entered on an inventory sheet by another officer. Officer Ryder testified in greater detail regarding the Fishers Police policy than did the officer regarding the policy in *Fair*, including that it specifically allowed closed containers to be opened so long as they could contain items of value. Finally, there is no indication that anything was searched and inventoried that was not of value, which would indicate pretext. Because the *Fair* Court was evaluating the search policy against a backdrop of strong indicia of pretext that are not present in this case, we conclude that *Fair* does not require reversal.

[14] Mendez-Vasquez also relies on our decision in *Sams*, in which the testimony regarding the inventory policy was "[w]e look at the vehicle and make sure anything that would be valuable [is inventoried], if you look at [it and determine] that's valuable[.]" 71 N.E.3d at 379 (first three sets of brackets in *Sams*). In reversing the trial court's decision to admit evidence found in the inventory search, we observed that the above policy was

> indistinguishable from what *Fair* held to be no policy at all: "[W]e conduct an inventory search of the car [to see if] there's anything valuable that might need to be ... noted as being in the car...." *Fair*, 627 N.E.2d at 436; *see also Rhodes v. State*, 50 N.E.3d 378, 382 (Ind. Ct. App. 2016) (invalidating inventory search) (inventory "to make sure no valuables are left inside the vehicle before it's towed"), *trans. denied*. In part, this is because inventory searches are definitionally searches for valuables (and,

to some degree, dangers). *See* [*South Dakota v. Opperman*, 428 U.S. 364, 369–70 (1976)]. Without further definition by standardized criteria, a policy "to inventory for valuables" gives officers unconstitutionally broad discretion. There is nothing in the record of what standardized criteria GPD officers use to decide what is "valuable" under the policy.

*Sams*, 71 N.E.3d at 380.

[15] In *Sams*, however, it was not necessary to reach the question of the policy's unconstitutionality because *the officers did not follow the policy*, searching a discarded fast-food paper bag that they did not even bother to claim was valuable. *Id*. at 375. The search of the fast-food bag therefore failed to fulfill any valid administrative purpose of an inventory search, creating an inference of pretext that the State could not counter. Because it was not necessary to reach the question of whether the policy itself was invalid in *Sams*, any declaration on the subject was rendered *obiter dictum*. In summary, because we conclude that *Fair* and *Sams* are distinguishable on the facts, they do not require reversal in this case.

We affirm the judgment of the trial court.

Riley, J., concurs.

Weissmann, J., dissents with separate opinion.

**Weissmann, Judge, dissenting.**

I respectfully dissent.

The State bears the burden to prove that an inventory search was conducted in good faith under standardized inventory procedures that sufficiently curtail the discretion of the searching officer. *Combs v. State*, 168 N.E.3d 985, 995 (Ind. 2021) (*citing Florida v. Wells*, 495 U.S. 1, 4 (1990)), *cert. denied*, 142 S. Ct. 1125 (2022). Based on this scant record, I cannot conclude that this search passes constitutional muster.

The State's evidence of a proper inventory search amounts largely to the following testimony from the arresting officer:

> Q: And does Fishers have a procedure on how to conduct an inventory of a vehicle?
>
> A: Yes, we are to log the property of value that is located within the vehicle and put it into the inventory log sheet. I had another officer come and assist me and when he responded he stated that he would do the paperwork for the logging of the vehicle.
>
> Q: Did you follow this procedure when inventorying the defendant's vehicle?
>
> A: I did.

Tr. Vol. II p.13. But since the arresting officer passed off the "paperwork" of the search to a different officer, his testimony can only go so far towards ensuring the proper procedures were followed. *Id.* To that end, the State failed

to elicit testimony from the officer responsible for the administrative work and neglected to admit into evidence the inventory sheets themselves, proof of impoundment, or the written text of Fishers' inventory search policy. Thus, despite the majority's claim to the contrary, this case shares almost all the pretextual concerns that led to suppression in *Fair v. State*, 627 N.E.2d 427, 436 (Ind. 1993).

[18]     As in *Fair*, Mendez-Vasquez's truck was (1) searched at the crime scene by (2) an officer responsible for, and with extensive experience in, criminal drug enforcement. As in *Fair*, (3) the record contains only the searching officer's testimony—not the officer who filled out the paperwork. And as in *Fair*, there is no evidence of (4) completed inventory sheets, or (5) actual impoundment of the truck.[1] The only indicator of a pretextual search not present here is that Officer Ryder asked about, and appears to have kept track of, Mendez-Vasquez's personal items. Yet, based on the State's failure to enter the inventory log sheets into evidence—or elicit testimony from the officer who filled out the sheets—Officer Ryder's brief testimony that "[he] did" follow the proper procedures of an inventory search falls short of the State's burden. Tr. Vol. II p. 13.

[19]     While the majority makes much of Officer Ryder's clarification that Fishers' policy allowed him to open closed containers so long as they might contain

---

[1] I don't doubt that the truck was impounded based on Mr. Mendez-Vasquez's appellate arguments. But this concession on appeal does not relieve the State of its burden of showing a constitutionally permissible inventory search.

valuables, this fails to calm my fear of pretext, as it does little to establish the existence of the necessary procedural safeguards. This is the critical inquiry courts must undergo in determining the constitutionality of inventory searches. For instance, Indiana has consistently required the State to explain not just *what* the inventory search policy is, but *how* the officer's actions matched those procedures in practice. *See, e.g.*, *Wilford v. State*, 50 N.E.3d 371, 377–78 (Ind. 2016); *Sams v. State*, 71 N.E.3d 372, 383 (Ind. Ct. App. 2017);[2] *Rhodes v. State*, 50 N.E.3d 378, 382–83 (Ind. Ct. App. 2016); *Whitley v. State*, 47 N.E.3d 640, 647–48 (Ind. Ct. App. 2015). Indeed, our Supreme Court has explicitly stated:

> Simply put, [a] passing reference to "our procedures in that situation" fails to "provide the particulars of the policy" as *Fair* requires. On this record, we know literally nothing about the substance of the "procedures" the officer referenced, let alone how his actions adhered to those procedures. Without these "particulars," then, we cannot evaluate whether this impoundment was a reasonable exercise of the community-caretaking function and not merely pretext for an inventory search.

*Wilford*, 50 N.E.3d at 377–78 (internal citation omitted).

[20]   Here, all we know is that officers look for valuables. But how does an officer gauge value? How does an officer determine which containers may be opened

---

[2] In *Sams*, our court made two things clear: (1) a policy consisting only of searching for "anything valuable" was unconstitutional; and (2) the officer's repeated deviations from that policy required reversal. The majority incorrectly relegates the first premise to irrelevant dicta. If anything, this has the dicta analysis backwards. *Sams*, 71 N.E.3d at 383 (holding "even if" the inventory search policy was constitutional, "the officers' major deviation from that regime" also required reversal).

to log items of value?  Requiring an answer to such basic questions is not too much to ask where the State is attempting to justify a warrantless search.  *See, e.g.*, *Sams*, 71 N.E.3d at 379–80; *People v. Mortel*, 197 A.D.3d 196, 233 (N.Y. 2021) (Chambers, J., concurring in part) ("Surely, if the standardized procedure in this case were limited to what [the officer] actually described, namely a generalized instruction to 'go through the vehicle' and 'note all the valuables,' it would be difficult, if not impossible, to conclude that such a procedure is designed to meet the legitimate objective of the search while limiting the discretion of the officer in the field."); *U.S. v. Mundy*, 621 F.3d 283, 290–91 (3rd Cir. 2010) (holding constitutional inventory search policy "for valuable items" that sufficiently explained procedural safeguards); *U.S. v. Battle*, 370 Fed. Appx. 426, 429 (4th Cir. 2010) (same); *U.S. v. Kimes*, 246 F.3d 800 (6th Cir. 2001) (same).  In short, exactly like in *Wilford*, we know nothing about the substance of the procedures used here, let alone whether Officer Ryder's actions adhered to that policy.[3]

[21]   Though the State relied on the inventory exception to justify the search of the purse, it failed to establish the necessary showing to ensure the search passed

---

[3] This is not to say that I disagree with the majority's view that usefulness or practicality may be a component of a lawful inventory search policy.  *Slip Op.* ¶¶ 10-12.  But the majority's discussion on this point is just conjecture because the State failed to provide the evidence necessary to properly review Fishers' inventory search procedures.  The only case the majority opinion affirmatively cites for its position—without having to explain away the opposite result—possessed the evidence necessary to review the substance of the procedures lacking here.  *Id.* ¶ 11 (citing *Peete v. State*, 678 N.E.2d 415, 420 (Ind. Ct. App. 1997) (holding inventory search constitutional where the officer "testified articulately" about his actions in conducting the search, explained how the general procedures of an inventory search matched his actions, and the written policy was entered into evidence)).

constitutional muster.  Based on this failure in the State's burden of proof, I would grant Mr. Mendez-Vasquez's motion to suppress.