

FILED

May 27 2015, 8:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lamont Wilford,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 27, 2015

Court of Appeals Case No.
49A02-1408-CR-534

Appeal from the Marion County
Superior Court
The Honorable Deborah Shook
Cause No. 49F07-1305-CM-035442

**Bailey, Judge.**

# Case Summary

[1] Lamont Wilford ("Wilford") appeals his conviction for Carrying a Handgun without Being Licensed, as a Class A misdemeanor.[1] He challenges his conviction on the basis that the handgun and photographs of the gun were erroneously admitted into evidence because the gun was discovered during a warrantless search of the car Wilford was driving.[2] We affirm.

# Issue

[2] Wilford presents one issue for review: whether the trial court abused its discretion in admitting into evidence the handgun and photographs of the gun discovered during a vehicle inventory search.

# Facts and Procedural History

[3] Mid-morning on May 30, 2013, Wilford's father borrowed a green Oldsmobile from his daughter (Wilford's sister) to drive to work. He picked up Wilford on the way. After his father arrived at work, Wilford borrowed the car to run errands. Shortly after, Wilford was driving in Marion County when Indianapolis Metropolitan Police Department ("IMPD") Officer Eli Raisovich ("Officer Raisovich") observed multiple equipment problems with the car,

---

[1] Ind. Code § 35-47-2-1; I.C. § 35-47-2-23(c).

[2] We heard oral argument on this case on April 29, 2015, at New Palestine High School. We thank the host venue for the welcome we received and the attorneys for their skilled advocacy during argument.

including "multiple cracks" in the windshield and a "smashed" back end that left the tail light operable but exposed. (Tr. 6.) Officer Raisovich initiated a traffic stop, and Wilford pulled off the road and parked in a Planet Fitness parking lot.[3]

[4] Officer Raisovich approached the car and asked to see Wilford's driver's license. After conducting a computer search using the Indiana identification card Wilford presented, the officer learned that Wilford's driver's license was suspended with forty-two points and that Wilford had a prior suspension. Officer Raisovich decided to place Wilford under arrest for driving while suspended with a prior suspension and called for back-up, to which IMPD Sergeant Michael Jefferson ("Sergeant Jefferson") responded.

[5] The officers approached the car and asked Wilford to exit the vehicle. Wilford did not immediately comply and appeared to be fumbling with his keys and attempting to roll up the windows. Wilford testified that he was trying to close the windows and lock the car so he "could leave it there to have somebody pick it up." (Tr. 67.) Wilford eventually exited the car and was placed in handcuffs at the rear of Officer Raisovich's cruiser.

[6] Officer Raisovich then decided to impound the car "because of the unsafe condition of it and the fact that . . . Wilford was being arrested and he was not

---

[3] Fox 59 TV personality Russ McQuaid and a camera operator were riding along with Officer Raisovich at the time. Video recording of the stop, if any was taken, was not introduced into evidence.

the owner of the vehicle." (Tr. 10.) Wilford told the officers that the car belonged to his sister, and Officer Raisovich testified that he would have released the vehicle "[i]f the owner would've been there and with a . . . valid license[.]" (Tr. 11.) But he also testified that, due to "the totality of the thing," that is, the unsafe condition, Wilford's arrest, and the fact that Wilford was not the owner, "our procedures in that situation" indicated the vehicle should be towed. (Tr. 11.)

[7] Officer Raisovich then asked Sergeant Jefferson to inventory the car's contents prior to towing. While completing the inventory, Sergeant Jefferson discovered a stolen handgun in the front center console. An evidence technician photographed the gun in the car. Wilford admitted that the gun was his and that he did not have a handgun license.

[8] On May 30, 2013, Wilford was charged with Carrying a Handgun without Being Licensed and Driving While Suspended with a Prior Suspension,[4] each a Class A misdemeanor. On July 9, 2014, a bench trial commenced. At trial, Wilford objected to the admission into evidence of the gun and photographs of the gun in the car, arguing that the vehicle search was not a valid inventory search and therefore violated his rights under both the Fourth Amendment to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution. The State contended that the evidence was obtained in a reasonable inventory

---

[4] I.C. § 9-24-19-2.

search. The trial court admitted the gun and photographs. At the conclusion of trial, Wilford was found guilty of both charges. For each offense, Wilford was sentenced to 365 days, to be served concurrently, with 357 days suspended to probation. Wilford appeals only his conviction for Carrying a Handgun without Being Licensed.

# Discussion and Decision

## Standard of Review

[9] The trial court has broad discretion to rule on the admissibility of evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). We review the court's ruling for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances before the court and the error affects a party's substantial rights. *Id.* (citation and quotation marks omitted). On appeal, we do not reweigh the evidence, but consider the evidence most favorable to the trial court's ruling. *Myers v. State*, 839 N.E.2d 1146, 1150 (Ind. 2005). An appellant's challenge to the constitutionality of a search or seizure raises a question of law, which we review *de novo*. *Guilmette*, 14 N.E.3d at 40-41.

## Reasonable Expectation of Privacy & Standing

[10] As an initial matter, the State argues that Wilford did not establish that he had a reasonable expectation of privacy in his sister's car or that he had standing under the Indiana Constitution that would allow him to challenge the validity

of the search.  To challenge a search under the Indiana Constitution, "a defendant must establish ownership, control, possession, or interest" in the premises searched.  *Campos v. State*, 885 N.E.2d 590, 598 (Ind. 2008) (quoting *Peterson v. State*, 674 N.E.2d 528, 534 (Ind. 1996)).  Under the Fourth Amendment, "a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable[.]" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).  Our supreme court has held that the driver of a borrowed car has met his burden under the federal and state constitutions if the driver testifies that he had consent to drive the car and the State introduces no evidence to the contrary.  *Campos*, 885 N.E.2d at 599.

[11] On appeal, the State argues that the evidence Wilford presented at trial was insufficient to establish that Wilford had permission of the car's owner.  The State concedes, however, that it did not pursue this argument at trial.  As to the state constitutional claim, the State must raise the issue of standing at the trial court level in order to preserve it for appeal.  *See Willis v. State*, 780 N.E.2d 423, 427 (Ind. Ct. App. 2002) (citing *Everroad v. State*, 590 N.E.2d 567, 569 (Ind. 1992)).  Similarly, this Court previously has held that "where the state has failed to make any trial court challenge as to whether the defendant has a legitimate expectation of privacy, the state may not raise the issue for the first time on appeal." *Gregory v. State*, 885 N.E.2d 697, 704 (Ind. Ct. App. 2008), *trans. denied*.  *See also Armour v. State*, 762 N.E.2d 208, 213 (Ind. Ct. App. 2002), *trans. denied*.  Because the State's objections to standing and whether Wilford had a

reasonable expectation of privacy in the car were not raised in the trial court, these arguments are waived.

[12] We turn now to Wilford's contention that the police officer's warrantless search of the car was unconstitutional.

# Fourth Amendment

[13] The Fourth Amendment provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The Fourth Amendment's protections against unreasonable searches and seizures extend to the States through the Fourteenth Amendment. *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006) (citing *Mapp v. Ohio*, 367 U.S. 643, 650 (1961); *Berry v. State*, 704 N.E.2d 462, 464-65 (Ind. 1998)). The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, homes, and belongings. *Id.* (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). A warrant is required for a search to be reasonable under the Fourth Amendment, unless an exception to the requirement applies. *Id.* "The State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement." *Id.*

[14] A valid inventory search is a well-established exception to the warrant requirement. *Id.* (citing *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976); *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993)). Under this exception, the police may conduct a warrantless search of a lawfully impounded vehicle if the search

is designed to produce an inventory of the vehicle's contents. *Fair*, 627 N.E.2d at 430. When the police conduct an inventory search, they perform an administrative or caretaking function, rather than a criminal investigatory function. *Id*. The rationale for the inventory exception is three-fold: (1) protection of private property in police custody; (2) protection of police against claims of lost or stolen property; and (3) protection of police from possible danger. *Taylor*, 842 N.E.2d at 330-31.

[15] As in all Fourth Amendment cases, the test of constitutionality in inventory cases is reasonableness. *Fair*, 627 N.E.2d at 431. "In determining the reasonableness of an inventory search, courts must examine all the facts and circumstances of a case." *Id.* We examine both the propriety of the impoundment and the scope of the inventory, and where either is unreasonable, the search will not be upheld. *Id*.

## Propriety of Impoundment

[16] The threshold question in inventory cases is whether the impoundment was proper. *Fair*, 627 N.E.2d at 431. The police may impound a vehicle when done as part of routine administrative caretaking functions or when authorized by statute. *Taylor,* 842 N.E.2d at 331.

[17] The State first argues that impoundment was authorized by statute, specifically Indiana Code section 9-22-1-5 (2012), which provides:

> When an officer discovers a vehicle in the possession of a person other than the owner of the vehicle and the person cannot establish the right

to possession of the vehicle, the vehicle shall be taken to and stored in a suitable place.

[18] The State points to the fact that the car belonged to Wilford's sister and observes that "neither [Wilford] nor his father ever testified that the sister had authorized [Wilford] to drive her car on that day . . . ." (Appellee's Br. 16.) The State thus urges us to hold that the police were authorized – in fact, had an affirmative duty – to impound the car because Wilford was not the owner and could not establish the right to possess the car.

[19] It is undisputed that Wilford was not the owner. The relevant inquiry, then, is whether Wilford could not establish the right to possess his sister's car. Whereas the burden to establish standing or a reasonable expectation of privacy lies with the defendant, "[t]he State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement." *Taylor*, 842 N.E.2d at 330. It was therefore the State's burden to show that the decision to impound arose from Wilford's lack of right to possess the vehicle.

[20] At trial, Wilford's father testified that he borrowed the car from his daughter, picked up Wilford, and then loaned the car to Wilford to run errands. This is not a case, then, of unexplained possession. Furthermore, whether Wilford had permission to use the car was never seriously in dispute at trial. The State did not challenge Wilford's testimony, and thus Wilford presented no further evidence of his right to possession. Without more in the record, we cannot say that the State affirmatively showed that Wilford could not establish a right to possess the car he borrowed. We therefore turn to the State's alternate

argument: that the decision to impound Wilford's car was reasonable pursuant to the police's community caretaking function.

[21] To show that impoundment was warranted as an exercise of the police's community caretaking function, the State must demonstrate: (1) that the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing, and (2) that the decision to combat that threat by impoundment was in keeping with established departmental routine or regulation. *Fair*, 627 N.E.2d at 433. The question is not whether there was an absolute need to impound the vehicle, but whether the decision to do so was reasonable in light of the applicable standard. *Id.*

[22] Officer Raisovich testified that he initiated a traffic stop because of "multiple equipment problems" on the car. (Tr. 6.) He described the damage: "The rear end had been smashed uh, tail lamp lens cover on the driver side was missing[,] a white, a white light was visible and the windshield had multiple cracks in it." (Tr. 6.) Wilford's father also described the rear end as "wrecked." (Tr. 62.) After arresting Wilford for driving while suspended with a prior suspension, Officer Raisovich testified that he impounded the vehicle "because of the unsafe condition of it and the fact that . . . Wilford was being arrested and he was not the owner of the vehicle." (Tr. 10.) When asked again to describe the reason for impoundment, Officer Raisovich explained:

> The condition of the vehicle. I don't believe it was safe to operate on
> the street because there was uh, you know, danger from the rear

window breaks and like I said being in a rear end collision uh, the totality of the thing, he didn't own the vehicle uh, he was being placed under arrest. So uh, with our procedures in that situation, we towed the vehicle.

(Tr. 11.) The record thus shows that Officer Raisovich towed the car largely because it was unsafe to operate, but also because the owner was not present and the driver, whose license was suspended with forty-two points and a prior suspension, was being arrested for that very reason. The damaged and unoccupied car thus arguably presented a hazard to public safety.

Wilford nevertheless argues that the car, which was legally parked in a commercial parking lot, did not pose a safety hazard. Wilford relies primarily on *Gibson v. State*, 733 N.E.2d 945 (Ind. Ct. App. 2000), in which the defendant, Gibson, was arrested after a police officer's random computer check of Gibson's license plate revealed there was an outstanding warrant for his arrest for failure to appear for fishing without a license. *Id.* at 950. The police officer did not initiate a traffic stop, but arrested Gibson after Gibson had parked in a convenience store parking lot. *Id.* Based on statements Gibson made before being Mirandized, the police searched the car and found marijuana. *Id.* On appeal, this Court considered whether the marijuana would have been admissible because of "inevitable discovery" during an inventory search. *Id.* at 956. Citing the facts that (1) Gibson was parked on a commercial parking lot, (2) he was not given an opportunity to call a friend or relative to retrieve the van, (3) he would likely have been released on his own recognizance or on a nominal bond and thus could quickly reclaim his car, the Court concluded that impoundment would not have been proper. *Id.* at 957-58. Noting the similar

circumstances of being parked in a commercial lot, being arrested on a low-level offense, and not being permitted to call a friend or relative to pick up the car, Wilford argues that "[t]here was no community safety need for police to impound and tow the Oldsmobile." (Appellant's Br. 6.)

[25] Although Wilford was parked in a commercial parking lot, we do not find that fact dispositive. The car in this case was damaged and unsafe to operate, unlike the car in *Gibson* and other cases in which the car was parked in a commercial parking lot. *See, e.g., Fair*, 627 N.E.2d at 433 (noting that the case involved "an *undamaged* vehicle neatly parked in a relatively secure private parking facility") (emphasis added). Wilford, however, contends that "there was no issue with the structural integrity of the vehicle" and that there was "no testimony the cracks in the windshield obstructed the driver's view." (Appellant's Br. 8.) He points to Officer Raisovich's testimony that the officer would have released the car to the owner if the owner had been present with a valid driver's license, and suggests that this testimony, coupled with the lack of photographic evidence of the damage, undercuts the officer's testimony that the car was unsafe to operate. We observe, however, that Officer Raisovich did not say that he would have allowed the owner to drive the car away, but simply that he would have released it to the registered owner. More importantly, the "multiple equipment problems" (Tr. 6) were the impetus for the original stop, the legality of which Wilford did not challenge at trial or on appeal.

[26] Wilford next argues that, even if the car arguably presented a threat to the community, the State failed to show that "the decision to combat that threat by

impoundment was in keeping with established departmental routine or regulation." *Fair*, 627 N.E.2d at 433. An officer's decision to impound must rest upon "standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Berry v. State*, 967 N.E.2d 87, 92 (Ind. Ct. App. 2012) (quoting *Colorado v. Bertine*, 479 U.S. 367, 375 (1987)). Here, Officer Raisovich testified that due to "the totality of the thing," that is, the unsafe condition, the driver's arrest, and the fact that Wilford was not the owner, "our procedures in that situation" indicated the vehicle should be towed. (Tr. 11.) Citing *Berry*, Wilford argues that Officer Raisovich's "cursory statement" that towing was authorized by "our procedures in that situation" was insufficient to establish that the decision to impound was made in conformity with standard police procedures. (Appellant's Br. 10.)

[27] In *Berry*, a police officer issued Berry a citation for driving while suspended and then decided to impound and search Berry's car. *Berry*, 967 N.E.2d at 90. During the search, the officer discovered marijuana. *Id*. At Berry's bench trial, the police officer testified that "he chose to impound Berry's vehicle because Berry 'didn't have a valid license and he didn't have proof of insurance for the vehicle.'" *Id.* at 92 (quoting the officer's testimony). However, no evidence was introduced that the officer's decision to impound the car was made pursuant to a policy or procedure. *Id.* at 92. This Court noted "that other cases have found formal policies relevant in justifying impoundment" and held that impoundment of Berry's car was improper because, without evidence of

IMPD's policy, "we cannot say whether [the officer's] discretion to impound Berry's vehicle was in keeping with such policy." *Id.*

[28] In this case, Officer Raisovich, a twenty-three-year veteran of IMPD and the Marion County Sheriff's Department, testified that his decision to impound based on the totality of the circumstances was in keeping "with our procedures in that situation." (Tr. 11.) We are thus not confronted with a complete lack of evidence about the policy, as was the case in *Berry*. And while perhaps introduction of the formal, written policy would have been helpful to evaluate and expand upon Officer Raisovich's testimony, we cannot forget that the ultimate test of constitutionality in inventory cases is reasonableness. *Fair*, 627 N.E.2d at 431. "In determining the reasonableness of an inventory search, courts must examine all the facts and circumstances of a case." *Id.* Here, the police initiated a traffic stop of an unsafe car, which was in the sole possession of a driver with suspended privileges who did not own the vehicle. As a result of the driver's arrest for the driving-related offense, the car would be left unattended for an unknown period of time. The officer testified that, based on the totality of the circumstances, police procedure provided for impoundment in that situation. Under these circumstances, we hold that Officer Raisovich's decision to impound the vehicle was reasonable.

## Scope of the Inventory

[29] To pass constitutional muster, not only must the decision to impound be reasonable, but the search itself must be conducted pursuant to standard police

procedures. *Fair*, 627 N.E.2d at 435. "When an inventory is carried out in accordance with routine police procedures, there is an assurance that the intrusion will not exceed the scope necessary to fulfill these caretaking needs." *Rabadi v. State*, 541 N.E.2d 271, 274 (Ind. 1989). However, if the inventory is not conducted as a matter of routine policy to fulfill the caretaking functions, the risk that it is being used as a mere pretext to conceal an investigatory police motive becomes too great. *Id.* The rule that standardized criteria or established routine must exist as a precondition to a valid inventory search is therefore designed to ensure that the inventory is not a pretext "'for a general rummaging in order to discover incriminating evidence.'" *Edwards v. State*, 762 N.E.2d 128, 134 (Ind. Ct. App. 2002) (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)), *aff'd on reh'g, trans. denied*. To show that a search comes within the inventory exception, the State must do more than offer the bald allegation of law enforcement officers that the search was conducted as a routine inventory. *Id.* at 133.

[30] Here, the search was conducted on scene prior to towing, which Officer Raisovich testified was standard IMPD procedure. Sergeant Jefferson, who performed the search, described an inventory search as "a department policy that when we take custody of the vehicle we go through and we're checking for valuables." (Tr. 35.) Sergeant Jefferson then described the inventory search process:

> The first thing I do is I look under the front seat uh, I check the uh, center console, I go to the rear driver side, I check the compartment on the rear driver side. I go around the other side of the vehicle and I

> check the front passenger, I check the rear passenger area and then I check the trunk.

[31] (Tr. 36.) During the search, Sergeant Jefferson discovered the handgun inside the front seat center console of the car. The gun was resting on top of the other contents.

[32] In this case, the testimony of the experienced law enforcement officers constituted more than "bald allegations" that they conducted a routine inventory search; rather, their testimony described the purpose of the inventory, outlined the procedures used to conduct this particular inventory, and established that IMPD policy authorizes on-site inventory searches. Even absent introduction of the formal IMPD policy on inventory searches, we think this testimony was sufficient to show that the search was part of established and routine procedures that are consistent with the community caretaking function. *See Faust v. State*, 804 N.E.2d 1242, 1245 (Ind. Ct. App. 2004) (officer's description of the purpose of an inventory search, brief recitation of the department policy, and testimony that in practice only valuables needed to be documented, was sufficient testimony to establish a valid inventory search), *trans. denied*.

[33] Furthermore, contrary to Wilford's arguments, this record does not contain indicia of pretext for "general rummaging" through the car to find incriminating evidence. Wilford was already under arrest for driving while suspended when Officer Raisovich decided to impound the car. Sergeant Jefferson followed the described procedure when he conducted the search. And

as the State observes, the center console is an area of the car in which personal property is frequently stored by many drivers. Thus, opening the console serves the three underlying purposes of the inventory exception: protection of private property in police custody, protection of police against claims of lost or stolen property, and protection of police from possible danger. *See Taylor*, 842 N.E.2d at 331.

[34] Based on our review of the facts and circumstances of this case, it was reasonable under the Fourth Amendment for the police to impound the car Wilford was driving and inventory the contents before towing. Accordingly, the trial court did not abuse its discretion in admitting the gun and photographs of the gun into evidence.

# Article 1, Section 11

[35] The language of Article 1, Section 11 of the Indiana Constitution mirrors the Fourth Amendment's protections against unreasonable searches and seizures. U.S. Const. amend. IV; Ind. Const. art 1, § 11; *Trowbridge v. State*, 717 N.E.2d 138, 143 (Ind. 1999). When examining the constitutionality of a search, the ultimate standard dictated by Article 1, Section 11 is the same as that of the Fourth Amendment: reasonableness of the police conduct. *Gibson*, 733 N.E.2d at 956. As under the Fourth Amendment, a valid inventory search is a recognized exception to the Article 1, Section 11 warrant requirement. *Taylor*, 842 N.E.2d at 334. However, the tests for determining a rights violation differ under the two provisions. *Trowbridge*, 717 N.E.2d at 143. Under the Indiana

Constitution, the State must show that an inventory search was reasonable in light of the totality of circumstances. *Id.*

[36] Despite the different analytical framework, our supreme court has found that the factors that speak to the reasonableness of an inventory search under the Fourth Amendment are also relevant to the reasonableness of an inventory search under Article 1, Section 11. *See Taylor*, 842 N.E.2d at 334 (holding that "the factors leading to our conclusion that impounding [the defendant's] car was not warranted by police administrative caretaking functions [under the Fourth Amendment analysis] support the conclusion that the requirements of the Indiana Constitution were violated as well"). For the same reasons the search in this case was reasonable under the Fourth Amendment, the officer's decision to impound and conduct an inventory search of the car Wilford was driving was reasonable under Article 1, Section 11 of the Indiana Constitution.[5]

# Conclusion

[37] The trial court did not abuse its discretion when it admitted the handgun and photographs of the gun into evidence.

[38] Affirmed.

---

[5] Because we decide the question presented on its merits, we do not address the State's argument that the handgun and photographs of the gun were cumulative of the police officer testimony regarding the gun.

Baker, J., and Bradford, J., concur.