## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Aug 28 2015, 8:47 am
*Kevin S. Smith*
**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Goodin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 28, 2015

Court of Appeals Case No.
49A05-1502-CR-43

Appeal from the Marion Superior Court

The Honorable Linda Brown, Judge

Trial Court Cause No.
49G10-1410-CM-49720

**Robb, Judge.**

# Case Summary and Issue

[1] Following a bench trial, David Goodin was convicted of possession of paraphernalia, a Class A misdemeanor. Goodin appeals, raising the following issue for our review: whether the trial court abused its discretion by admitting evidence seized during an inventory search. Concluding that the trial court did not abuse its discretion, we affirm.

# Facts and Procedural History

[2] On October 30, 2014, Officer Kyle Flynn of the Indianapolis Metropolitan Police Department ("IMPD") was patrolling in the area of 38th Street and Sherman Drive. Officer Flynn was traveling westbound on 38th Street when he observed a maroon Chevrolet pickup truck with a temporary paper license plate. Officer Flynn ran a license plate check and discovered that the plate was registered to a teal Chevrolet. Based on this discrepancy, Officer Flynn initiated a traffic stop at 38th Street and Adams Street.

[3] Goodin was driving. When Officer Flynn requested Goodin's driver's license and registration, Goodin said that he had just purchased the vehicle but did not have the registration or any documentation to prove that the vehicle had just been purchased. Officer Flynn returned to his vehicle to run a check on the truck's VIN number. After determining that the truck was not registered and would need to be towed, Officer Flynn asked Goodin to exit the vehicle. Officer Flynn then conducted an inventory search. He arrested Goodin upon

discovering a syringe and a burnt spoon in the center console. Goodin admitted that the paraphernalia was his and told Officer Flynn that he was a heroin addict. The spoon later tested positive for heroin residue.

[4]     On October 31, 2014, the State charged Goodin with possession of paraphernalia, a Class A misdemeanor. During a bench trial on January 13, 2015, the State did not introduce IMPD's formal written policy on inventory searches and relied solely on officer testimony to establish the foundation for the search. Officer Flynn testified:

> [Officer Flynn:] An inventory search – the whole purpose of the search is to identify any illegal substances, firearms, anything that should not be in the vehicle according to the law; also for liability purposes to make sure there's nothing of value in the vehicle, uh, so that property or money is going to be towed can stay in the vehicle for liability reasons, that its [sic] properly documented. If it's something like money, something of extreme value like a plasma screen . . . we will take that down to the Property Room.
> * * *
> [Defense counsel:] [Y]ou're trained to know the department's policy and procedure manual, is that correct?
> [Officer Flynn:] Correct.
> [Defense counsel:] The General Rule Order, uh, requiring what the policy is for towing and impounding a vehicle?
> [Officer Flynn:] Correct.
> [Defense counsel:] What is the first thing that you have to do when you decide or determine that you have to impound a vehicle?
> [Officer Flynn:] When an inventory – or when we're impounding a vehicle, uh, we will call for a tow truck. We will, once they're on the scene, we'll complete a tow slip with a case number, CAD number, uh, if there is a case number attached to it; and let's see, we'll document the owner, plate, if it's properly

plated, date, time, any other, uh, piece of information that are [sic] pertinent to the investigation, and uh, we'll state if there's anything of value in the car, and I will note that on the tow slip, or in the report; or we will release property to the owner or family or friends that may arrive on the scene . . . .

[Defense counsel:] [S]o all property discovered is supposed to be listed in some report; is that correct?

[Officer Flynn:] I'm not sure all property, but?

Transcript at 14, 29-30. Defense counsel also questioned Officer Flynn about the property in the vehicle at the time of the search and whether Officer Flynn made an inventory list:

[Defense counsel:] Did you find any other property in Mr. Goodin's vehicle?

[Officer Flynn:] There were other objects, property in the car.

[Defense counsel:] Did you make a list of that property?

[Officer Flynn:] Negative.

[Defense counsel:] Did you bring that property to the Property Room?

[Officer Flynn:] Negative.

[Defense counsel:] Okay. Do you remember any – what that property was that you found?

[Officer Flynn:] I cannot recall anything of substantial value that I as an officer would reasonably believe . . . would be taken out of the vehicle . . . .

*Id.* at 31-32.

[5] Goodin objected to the admission of the syringe and spoon, arguing the State had failed to establish that the inventory search was properly conducted in conformity with IMPD policy and procedure. The trial court overruled Goodin's objection and found Goodin guilty as charged. The trial court

sentenced Goodin to 365 days in the Marion County Jail, with credit for two days served and the remainder suspended to probation. He now appeals.

# Discussion and Decision

## I. Standard of Review

Goodin contends that the inventory search was improperly conducted and therefore violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. When a defendant challenges the constitutionality of a search following a completed trial, the issue is whether the trial court abused its discretion by admitting the evidence found during the search. *Bulthuis v. State*, 17 N.E.3d 378, 382 (Ind. Ct. App. 2014), *trans. denied*. The trial court abuses its discretion only if its decision was clearly against the logic and effect of the facts and circumstances before it, or if the trial court has misinterpreted the law. *Id.* at 382-83.

In reviewing the trial court's ruling, we do not reweigh the evidence but defer to the trial court's factual determinations unless clearly erroneous. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). We view conflicting evidence most favorably to the trial court's ruling. *Id.* However, we also consider any undisputed evidence favorable to the defendant. *State v. Cunningham*, 26 N.E.3d 21, 25 (Ind. 2015). Finally, although the trial court's factual determinations are entitled to deferential review, the constitutionality of a

search is a question of law reviewed de novo. *Johnson v. State*, 992 N.E.2d 955, 957 (Ind. Ct. App. 2013), *trans. denied*.

# II. Admission of Evidence

## A. Fourth Amendment

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects persons from unreasonable searches and seizures. *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006). The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, homes, and belongings. *Id.* (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). Subject to certain well-established exceptions, a warrant is required to demonstrate that a search is reasonable. *Berry v. State*, 967 N.E.2d 87, 90 (Ind. Ct. App. 2012). The State bears the burden of proving that an exception to the warrant requirement existed at the time of the search. *Id.*

One such exception is a valid inventory search. *Taylor*, 842 N.E.2d at 330 (citing *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976)). This exception permits police to conduct a warrantless search of a lawfully impounded vehicle if the search is designed to produce an inventory of the vehicle's contents. *Wilford v. State*, 31 N.E.3d 1023, 1029 (Ind. Ct. App. 2015). The rationale for an inventory search is three-fold: (1) protection of private property in police custody; (2) protection of police against claims of lost or stolen property; and (3) protection of police from possible danger. *Id.*

[10]    "As in all Fourth Amendment cases, the test of constitutionality in inventory cases is reasonableness." *Id.* In determining the reasonableness of an inventory search, we examine all the facts and circumstances of the case. *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993). We consider the propriety of the impoundment giving rise to the search and the scope of the inventory search itself. *Id.* The search must be conducted pursuant to and in conformity with standard police procedures. *Faust v. State*, 804 N.E.2d 1242, 1244-45 (Ind. Ct. App. 2004), *trans. denied*. Evidence of established local policy and procedure is required "to ensure that the inventory is not a pretext for a general rummaging in order to discover incriminating evidence." *Edwards v. State*, 762 N.E.2d 128, 134 (Ind. Ct. App. 2002) (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)) (internal quotation marks omitted), *aff'd on reh'g*, 768 N.E.2d 506, *trans. denied*.

[11]    Impounding a vehicle is proper when authorized by statute or done pursuant to the community caretaking function of the police. *Taylor*, 842 N.E.2d at 331. Goodin concedes that the impoundment was authorized by Indiana Code section 9-18-2-43, which provides in relevant part:

> (a) . . . [A] law enforcement officer authorized to enforce motor vehicle laws who discovers a vehicle required to be registered under this article that does not have the proper certificate of registration or license plate:
>
> > (1) shall take the vehicle into the officer's custody; and
> >
> > (2) may cause the vehicle to be taken to and stored in a suitable place until:

> (A) the legal owner of the vehicle can be found; or
>
> (B) the proper certificate of registration and license plates have been procured.

Goodin argues, however, that the search conducted pursuant to the impoundment was unreasonable. He contends that the inventory was a pretextual search for evidence of a crime and that Officer Flynn did not follow standard police procedures.

[12] Inventory searches performed in conformity with standard police procedures are reasonable under the Fourth Amendment, but the State must present more than the conclusory testimony of a police officer that the search was conducted as a routine inventory. *Edwards*, 762 N.E.2d at 133. There must be an evidentiary basis for evaluating whether an inventory search was performed in conformity with standard police procedures, and the circumstances surrounding the search must indicate that the search was conducted pursuant to established procedures. *See id.* Introduction of a department's formal written policy is not required. *See Wilford*, 31 N.E.3d at 1033. Testimony alone may be sufficient to show that a search was part of established procedures. *See id.*

[13] In the present case, we must first determine if the State introduced an adequate evidentiary basis for evaluating whether the inventory search was performed in conformity with standard police procedures. Our prior decisions in *Wilford*, 31 N.E.3d 1023, and *Edwards*, 762 N.E.2d 128, are instructive on this point. In *Wilford*, an inventory search was conducted by an IMPD officer on scene prior

to towing.  The officer who performed the search described an inventory search as "a department policy that when we take custody of the vehicle we go through and we're checking for valuables."  *Wilford*, 31 N.E.3d at 1033.  The officer then outlined the inventory search process:

> The first thing I do is I look under the front seat uh, I check the uh, center console, I go to the rear driver side, I check the compartment on the rear driver side. I go around the other side of the vehicle and I check the front passenger, I check the rear passenger area and then I check the trunk.

*Id.*  We held that the officer's testimony was sufficient to show that the search was part of established IMPD procedures.  *Id.*

[14]    By contrast, in *Edwards*, the testifying officer only described the search at issue, and "the record d[id] not include the substance of any police department policy regarding inventory searches, or even indicate there is such a policy."  762 N.E.2d at 133.  The officer testified:

> [State:]  Did you, uh, search the vehicle?
> [Officer:]  Yes I did.
> [State:]  And tell me what steps you took to search the vehicle.
> [Officer:]  Basically, I just opened the bag and looked at the cigarettes to confirm that there were cigarettes in that bag.  There was.  I then started taking pictures of the cigarettes.  I took pictures of the tool box, once I opened it.  I took pictures inside the truck, *just basically got an inventory* to protect myself because I don't want the (inaudible) coming back and saying there was Ten Thousand Dollars in that vehicle that, you know, wasn't there to start with.

*Id.* (emphasis added). We held that the officer's testimony was merely a "bald allegation" that the search was conducted as a routine inventory and agreed with the defendant that the trial court abused its discretion by admitting the evidence collected during the search. *Id.*

[15] We conclude that Officer Flynn's testimony constituted more than a "bald allegation" that the search was conducted as a routine inventory. Officer Flynn acknowledged the IMPD General Order covering impoundment and inventory searches and agreed that he had been trained on the department's procedures. He described the purpose of an inventory search and the procedure for impounding a vehicle, from calling the tow truck to completing a tow slip. The tow slip, he explained, states the date and time of the tow, a case number, information concerning the vehicle's owner and license plate, and documentation of any valuables in the vehicle. When asked by defense counsel, Officer Flynn did not agree that "all property discovered" is supposed to be noted on an inventory list. Tr. at 30. Officer Flynn stated that only high value items are taken to the IMPD Property Room and intimated that he did not create an inventory list or transport any items to the Property Room in this instance because nothing of substantial value was found. We believe this testimony provided an adequate evidentiary basis for evaluating whether the inventory search was performed in conformity with standard police procedures.

[16] We also believe that the circumstances surrounding the inventory search indicate that it was performed in conformity with standard police procedures. Goodin concedes that the impoundment was authorized by statute, and as

Officer Flynn testified, searching the vehicle prior to towing was standard IMPD procedure. Moreover, the paraphernalia was discovered in the center console of the vehicle. As we stated in *Wilford*, searching the center console serves the underlying purposes of an inventory search because it is "an area of the car in which personal property is frequently stored by many drivers." 31 N.E.3d at 1033.

[17]   Goodin nonetheless argues that the absence of an inventory list means that Officer Flynn failed to complete the inventory, thereby invalidating the search. We disagree. Since one purpose of an inventory search is to protect the police against claims of lost or stolen property, *id.* at 1029, a written inventory list is not required when nothing of value is found inside a vehicle. *See Peete v. State*, 678 N.E.2d 415, 420-21 (Ind. Ct. App. 1997), *trans. denied*. Here, Officer Flynn did not make an inventory list because he did not find "anything of substantial value that [he] as an officer would reasonably believe . . . would be taken out of the vehicle . . . ." Tr. at 31-32.

[18]   Based on our review of the facts and circumstances of this case, we conclude that the inventory search was reasonable under the Fourth Amendment, as it was conducted pursuant to and in conformity with standard police procedures. Accordingly, the trial court did not abuse its discretion in admitting the syringe and spoon seized during the search.

### B. Article 1, Section 11

[19]    Article 1, Section 11 of the Indiana Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated . . . ."  Although the language of Section 11 is virtually identical to its Fourth Amendment counterpart, our supreme court has independently interpreted and applied Section 11.  *Mitchell v. State*, 745 N.E.2d 775, 785-86 (Ind. 2001).  As to inventory searches in particular, we explained in *Wilford*:

> When examining the constitutionality of a search, the ultimate standard dictated by Article 1, Section 11 is the same as that of the Fourth Amendment: reasonableness of the police conduct. As under the Fourth Amendment, a valid inventory search is a recognized exception to the Article 1, Section 11 warrant requirement.  However, the tests for determining a rights violation differ under the two provisions.  Under the Indiana Constitution, the State must show that an inventory search was reasonable in light of the totality of circumstances.

31 N.E.3d at 1033-34 (citations omitted).

[20]    Notwithstanding the independent analytical framework of Section 11, "our supreme court has found that the factors that speak to the reasonableness of an inventory search under the Fourth Amendment are also relevant to the reasonableness of an inventory search under Article 1, Section 11."  *Id.* at 1034 (citing *Taylor*, 842 N.E.2d at 334).  We therefore conclude, for the same reasons that the search was reasonable under the Fourth Amendment, that the inventory search in this case was reasonable under Article 1, Section 11.

# Conclusion

[21] The inventory search in this case was reasonable under the Fourth Amendment and Article 1, Section 11 because it was conducted pursuant to and in conformity with standard police procedures. We conclude that the trial court did not abuse its discretion by admitting evidence seized during the search and thus affirm Goodin's conviction for possession of paraphernalia.

[22] Affirmed.

Vaidik, C.J., and Pyle, J., concur.