

FILED

Jan 19 2016, 8:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Chauncy Rhodes, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | January 19, 2016 <br><br> Court of Appeals Case No. 49A02-1503-CR-173 <br><br> Appeal from the Marion County Superior Court <br><br> The Honorable Jose Salinas, Judge <br><br> Trial Court Cause No. 49G14-1404-FD-20261 |

**May, Judge.**

[1] Chauncy Rhodes appeals his conviction of Class D felony possession of marijuana with a prior conviction of possession of marijuana.[1] As the trial court abused its discretion when it admitted evidence obtained from an inventory search of Rhodes' vehicle, we reverse.

## Facts and Procedural History[2]

[2] On August 18, 2014, Officer Dustin Greathouse saw Rhodes driving over the speed limit. Officer Greathouse initiated a traffic stop, and Rhodes parked his vehicle in a nearby driveway. Rhodes initially told Officer Greathouse he pulled into the driveway because his cousin lived there; Rhodes later admitted he was trying to avoid Officer Greathouse because Rhodes was driving with a suspended license.

[3] Officer Greathouse arrested Rhodes for driving with a suspended license and decided to tow the car. Before he towed the car, Officer Greathouse conducted an inventory search of the glove box, trunk, and passenger compartment. He found "numerous personal items," (Tr. at 13), and "miscellaneous items," (*id.* at 49), for which he did not create a record. Officer Greathouse also found a half-eaten pizza, a pizza delivery bag, and a jar of money. In the glove box, Officer Greathouse found a "red metal grinder," (*id.* at 49), containing "a small

---

[1] Ind. Code § 35-48-4-11(c) (2014).

[2] We held oral argument on this matter on December 3, 2015, at New Prairie High School in Carlisle, Indiana. We thank the staff, faculty, and students for their hospitality and we commend counsel for the quality of their advocacy.

amount of marijuana." (*Id.*)  At some point before the car was towed, someone from the house came outside to ask if everything was okay and to "make sure the car was not going to be left in the driveway." (*Id.* at 11.)

[4] Before his bench trial, Rhodes filed a motion to suppress the items found as part of the inventory search on the ground the search violated his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.  After a hearing, Rhodes' motion was denied.  He objected to the admission of the same evidence during trial, and his objection was overruled.  The trial court found Rhodes guilty of Class A misdemeanor possession of marijuana and Class A misdemeanor driving while suspended.[3]  It enhanced the marijuana possession conviction to a D felony based on Rhodes' prior conviction of marijuana possession after Rhodes stipulated to the prior conviction.

## Discussion and Decision

[5] Rhodes did not seek interlocutory review of the denial of his motion to suppress but instead appeals following trial.  This issue is therefore "appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Lundquist v. State*, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005).  Our review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial

---

[3] Rhodes does not appeal his conviction of Class A misdemeanor driving while suspended.

objection. *Id*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id*. However, we must also consider the uncontested evidence favorable to the defendant. *Id*.

[6] The Fourth Amendment to the United States Constitution requires law enforcement officials to obtain a valid warrant before conducting searches or seizures. *State v. Straub*, 749 N.E.2d 593, 597 (Ind. Ct. App. 2001). However, "on occasion the public interest demands greater flexibility than is offered by the constitutional mandate" of a warrant. *Rabadi v. State*, 541 N.E.2d 271, 274 (Ind. 1989). The exceptions to the warrant requirement are "few in number and carefully delineated." *United States v. United States Dist. Court for Eastern Dist. Of Mich., Southern Division*, 407 U.S. 297, 313 (1972).

[7] One exception to the warrant requirement is an inventory search of a properly impounded vehicle. *Fair v. State*, 627 N.E.2d 427, 430 (Ind. 1993). The purposes of an inventory search are: "1) protection of private property in police custody; 2) protection of police against claims of lost or stolen property; and 3) protection of police from possible danger." *Gibson v. State*, 733 N.E.2d 945, 956 (Ind. Ct. App. 2000). The test of constitutionality for an inventory search is reasonableness. *Id*. Our Indiana Supreme Court laid out in *Fair* the test for reasonableness with regard to an inventory search:

> In determining the reasonableness of an inventory search, courts must examine all the facts and circumstances of a case . . . . This examination typically encompasses two overlapping sets of circumstances. First, the propriety of the impoundment must be established because the need for the inventory arises from the

impoundment. Second, the scope of the inventory must be evaluated. Where either is clearly unreasonable, the search will not be upheld. In borderline cases, however, the ultimate character of the search is often most clearly revealed when both the necessitousness of the impoundment and the scrupulousness of the inventorying are viewed together.

627 N.E.2d at 431.

[8] The inventory search was unreasonable because the State did not prove the scope of the search complied with official police policy.[4] "The circumstances of the intrusion must also indicate that the search was carried out under routine department procedures which are consistent with the protection of officers from potential danger and false claims of lost or stolen property and the protection of those arrested." *Friend v. State*, 858 N.E.2d 646, 652 (Ind. Ct. App. 2006).[5]

[9] In *Edwards v. State*, 762 N.E.2d 128, 133 (Ind. Ct. App. 2002), *aff'd on reh'g*, 768 N.E.2d 506 (Ind. Ct. App. 2002), the State's evidence did not

> include the substance of any police department policy regarding inventory searches, or even indicate there is such a policy. To show that its actions come within the inventory exception, the State must do more than offer the bald allegation of law enforcement that the search was conducted as a routine

---

[4] As we hold the inventory search invalid, we need not determine if the impoundment was improper. *See Fair*, 627 N.E.2d at 431 ("Whether *either* [the impoundment or inventory search] is clearly unreasonable, the search will not be upheld.) (emphasis added).

[5] Rhodes correctly notes "inventory searches conducted at the impound lot by an officer assigned to such duties are preferred to searches conducted at the scene, without a warrant, by the arresting officer." *Edwards*, 762 N.E.2d at 134.

inventory. The trial court therefore had no evidentiary basis to evaluate whether the inventory search performed on Edwards' truck was in conformity with established local law enforcement policy.

[10] *Edwards* relied on *Stephens v. State*, 735 N.E.2d 278 (Ind. Ct. App. 2000), as an example of sufficient evidence of police procedure. In *Stephens*, the State presented evidence in the form of

> the records detail[ing] who towed the car, indicat[ing] the detective responsible for the investigation, and describ[ing] the valid traffic hazard basis for the tow. The detective conducted the search in front of two witnesses, compiled an inventory of all the contents of the vehicle, created a property sheet, and placed the items into the property room of the sheriff's department.

*Edwards*, 762 N.E.2d at 134 (citing *Stephens*, 735 N.E.2d at 282). We noted the preference that inventory searches be completed by an officer at the impound lot who regularly performs those types of duties. *Id.*

[11] Additionally, in *Fair*, our Indiana Supreme Court held:

> The fatal defect in this search is that the provisions of the Indianapolis Police Department's inventory policy are not established in sufficient detail by the record. Officer Wager testified *only* that "we conduct an inventory search of the car to see what kind of items are in it. If there's anything valuable that might need to be placed in the property room or otherwise noted as being in the car." There was no testimony whatsoever that provided the particulars of the policy and, therefore, it is not possible for this Court to determine whether the seemingly suspicious circumstances which [sic] attended the search were in

fact irregular. Without more, then, we can not [sic] conclude that the police department's inventory search was reasonable.

627 N.E.2d at 436 (citations to the record omitted).

[12] Officer Greathouse testified he conducted an inventory search of Rhodes' vehicle "to make sure no valuables are left inside the vehicle before it's towed[,]" and if valuable items are found, "we may take them and put them in the IMPD property room to be held for safekeeping." (Tr. at 12.) However, the only items Officer Greathouse inventoried were those items that supported the marijuana possession charge.

[13] Officer Greathouse's testimony regarding police procedure can be distinguished from that of the officer in *Faust v. State*, 804 N.E.2d 1242 (Ind. Ct. App. 2004), *trans. denied*, and *Wilford v. State*, 31 N.E.3d 1023 (Ind. Ct. App. 2015), *trans. pending*, in which we held an officer's testimony was sufficient to prove compliance with police procedure. In *Faust*, the officer's testimony was sufficient because the officer read from the procedural manual as part of his testimony. 804 N.E.2d at 1245. In *Wilford*, we determined

> the testimony of the experienced law enforcement officers constituted more than 'bald allegations' that they conducted a routine inventory search; rather, their testimony described the purpose of the inventory, outlined the procedures used to conduct this particular inventory, and established that IMPD policy authorizes on-site inventory searches. Even absent introduction of the formal IMPD policy on inventory searches, we think this testimony was sufficient to show that the search

was part of established and routine procedures that are consistent with the community caretaking function.

31 N.E.3d at 1033.

[14] As noted in the holding, the testimony in *Wilford* was significantly more detailed than the testimony offered by Officer Greathouse. In *Wilford*, the officer, a twenty-three year Indianapolis Police Department[6] veteran, testified regarding police inventory procedure:

> The first thing I do is I look under the front seat uh, I check the uh, center console, I go to the rear driver side, I check the compartment on the rear driver side. I go around the other side of the vehicle and I check the front passenger, I check the rear passenger area and then I check the trunk.

*Id.* In contrast, Officer Greathouse testified regarding police inventory procedure, "For an impounded vehicle, we will search the passenger compartment area as well as the glove box if it's unlocked and the trunk if it's unlocked." (Tr. at 12.) While Officer Greathouse's testimony comports with what he did, it seems highly unlikely the Indianapolis Police Department inventory search procedure varied as greatly as the officers' testimonies would suggest it did.

---

[6] At the time of the facts in *Wilford*, the Indianapolis Police Department was called "IPD." At the time of the facts herein, it was called "IMPD."

Officer Greathouse's testimony was insufficient to prove the inventory search he performed of Rhodes' vehicle complied with official police policy. Because the State did not present evidence of police procedure, the search violated Rhodes' Fourth Amendment[7] protection from unreasonable search and seizure. Therefore, the trial court abused its discretion when it admitted the evidence found in Rhodes' vehicle as part of the inventory search.

## Conclusion

The State did not provide sufficient evidence of police procedure and Officer Greathouse's compliance therewith. Therefore, the trial court abused its discretion when it admitted the marijuana found in Rhodes' car. Accordingly, we reverse Rhodes' conviction of Class D felony possession of marijuana with a prior conviction.

Reversed.

Barnes, J., concurs with separate opinion.

Crone, J., dissents with separate opinion.

---

[7] As we hold the inventory search unreasonable under the Fourth Amendment, we need not independently decide whether it violates Article 1, Section 11 of the Indiana Constitution because the two analyses focus on the totality of the circumstances. *See Taylor v. State*, 842 N.E.2d 327, 334 (Ind. 2006) (holding that "the factors leading to our conclusion that impounding [the defendant's] car was not warranted by police administrative caretaking functions [under the Fourth Amendment analysis] support the conclusion that the requirements of the Indiana Constitution were violated as well").

# IN THE
# COURT OF APPEALS OF INDIANA

Chauncy Rhodes,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
49A02-1503-CR-173

**Barnes, Judge, concurring.**

[18]   I fully concur with Judge May's conclusion that the search here fell far short of the requirements for a constitutional inventory search.

[19]   I write to explicitly and directly address the concerns that may arise as a result of our decision. Indiana Code Section 35-33-5-5(a) specifically outlines what must be done with regard to "inventory" that is recovered during an inventory search. The statute provides, "All items of property seized by any law enforcement agency as a result of an arrest, search warrant, or warrantless search, shall be securely held by the law enforcement agency under the order of the court trying the cause, except as provided in this section." Ind. Code § 35-33-5-5(a). I have voted to uphold inventory searches in cases such as *Jones v. State*, 856 N.E.2d 758 (Ind. Ct. App. 2006), and *Whitley v. State*, No. 49A02-1501-CR-50 (Ind. Ct. App. Dec. 7, 2015). I did so because there was at least

some semblance of comportment with constitutional and statutory requirements, and I felt comfortable some effort had been made to comply.

[20] There was no evidence of that happening here. No inventory, no listing of property, no taking of the car to an impoundment lot before searching, no securing of the property seized, no nothing. Following the outlined Indiana Code and constitutional requirements, as well as police department protocols regarding inventory searches, protects police officers from claims of theft, abuse of authority, evidence planting, and the like. There is no such protection when there is a lack of evidence as to protocols and the inventorying and securing of property. I am not suggesting that anything less than punctilious and exaggerated compliance will suffice, but there has to be more than was exhibited here. Thus, I fully concur with Judge May's opinion.

Chauncy Rhodes,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
49A02-1503-CR-173

**Crone, Judge, dissenting.**

[21] I respectfully disagree with the majority's conclusion that the scope of Officer Greathouse's inventory search of Rhodes's vehicle was unreasonable. I believe that the majority unduly emphasizes what the record does *not* show about IMPD's inventory search procedure instead of what the record *does* show.

[22] At the suppression hearing, the prosecutor asked the officer to give "a quick overview" on IMPD's policy "on impounding and inventorying vehicles[.]" Tr. at 12. The following exchange occurred:

> A[.] Okay. For an impounded vehicle, we will search the passenger compartment area as well as the glove box if it's unlocked and the trunk if it's unlocked.[8]

---

[8] Unlike the majority, I do not believe that this description of IMPD's inventory search procedure differs significantly from that of the more detailed description in *Wilford*.

Q[.]  Why do you do this?

A[.]  Just to make sure no valuables are left inside the vehicle before it's towed.

Q[.]  Okay.  If there are valuable items in the vehicle, what do you do with them?

A[.]  We'll document what they are.  If they're very valuable items, we may take them and put them in the IMPD property room to be held for safe keeping.

Q[.]  Did you find any valuable items in this vehicle?

A[.]  No.

*Id.* at 13.[9]

[23]  Like the officers' testimony in *Wilford*, Officer Greathouse's testimony "described the purpose of the inventory, outlined the procedures used to conduct this particular inventory, and established that IMPD policy authorizes on-site inventory searches."  31 N.E.3d at 1033.  Thus, as in *Wilford*, "[e]ven absent introduction of the formal IMPD policy on inventory searches, [I] think this testimony was sufficient to show that the search was part of established and routine procedures that are consistent with the community caretaking function."  *Id*.  Also, as in *Wilford*, "this record does not contain indicia of

---

[9] Rhodes complains about Officer Greathouse's failure to document the jar of money found in his vehicle, but there is no indication that it was of significant value.

pretext for 'general rummaging' through the car to find incriminating evidence[,]" in that Rhodes "was already under arrest for driving while suspended when Officer [Greathouse] decided to impound the car" and the officer "followed the described procedure when he conducted the search." *Id.*

[24] Moreover, I think that Officer Greathouse's decision to impound Rhodes's vehicle was reasonable under the circumstances, given that the car was parked in the "driveway of a private residence" and someone in the residence wanted "to make sure that the car was not going to be left in the driveway." Tr. at 15, 11. Therefore, I would uphold the search under both the state and federal constitutions and affirm Rhodes's conviction for class D felony marijuana possession.